UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **COLLEGE REPUBLICANS OF THE UNIVERSITY OF WASHINGTON; CHEVY SWANSON**, an Individual,<br><br>Plaintiffs,<br><br>vs.<br><br>**ANA MARI CAUCE**, in her official capacity as president of the University of Washington; ET AL,<br><br>Defendants. | CASE NO. C18-189-MJP<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD NOT ISSUE; [PROPOSED] ORDER**<br><br>Note On Mot. Cal.: March 30, 2018<br><br>Judge:    Hon. Marsha J. Pechman<br>Date:     April 17, 2018<br>Time:     10:00 a.m.<br>Crtrm.:   Suite 14206, United States Courthouse, 700 Stewart Street, Seattle, WA 98101-9906 |

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ...................................................................................................................1

STATEMENT OF RELEVENT FACTS ..............................................................................4

    A.   UW Opens Its Facilities For Expressive Use By The Public ................................ 5

    B.   UW's Security Fee Policy, Facially And Applied To Plaintiffs, Requires
        Reference To The Reactions Of Violent Mobs Targeting Politically
        Conservative Speakers ............................................................................................ 5

    C.   Plaintiffs Are Individually Responsible For Paying The Security Fee ............... 6

LEGAL STANDARD ...........................................................................................................6

ARGUMENT ........................................................................................................................8

PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ...................................................8

    A.   Plaintiffs' Likelihood of Success is Strong on Multiple Constitutional Grounds 8

    B.   UW Seattle's First and Fourteenth Amendment Violations ............................... 9

        1.  Red Square is a traditional public forum, or at least a designated forum .....10

        2.  Defendants Security Fee Policy, facially and as applied, constitutes an
            unconstitutional heckler's veto ........................................................................13

        3.  UW's Security Fee Policy violates Plaintiffs' Fourteenth Amendment equal
            protection rights ................................................................................................16

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

4. UW administrators have unfettered discretion over the amounts charged to RSOs, which they exercise by requiring some groups to pay substantially larger security fees than required of other groups.........................................17

C. UW Seattle Has Retaliated Against Plaintiffs On the Basis of their Exercise of their Free Speech Rights.........................................................................20

D. Plaintiffs Are Likely to Be Irreparably Harmed Absent Immediate Injunctive Relief ...............................................................................................................21

E. The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor .........................22

F. Injunctive Relief Is In The Public Interest ..............................................................23

THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT .........................23

CONCLUSION........................................................................................................................24

PLS' MOT. FOR PRELIM. INJ.
CASE NO. 18-CV-00189

Page - ii

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

# TABLE OF AUTHORITIES

**CASES**

*Americans for Prosperity Foundation v. Harris*
   182 F.Supp.3d 1049 (CDCA 2016) ............................................................. 22, 23

*Blair v. Bethel School Dist.*
   608 F.3d 540 (9th Cir. 2010) ......................................................................... 20

*Butler v. Elle*
   281 F.3d 1014 (9th Cir. 2002) ......................................................................... 8

*Christy v. Hodel*
   857 F.2d 1324 (9th Cir. 1988) ....................................................................... 18

*Citizens for Free Speech, LLC v. County of Alameda*
   62 F.Supp.3d 1129 (NDCA 2014) ................................................................. 17

*City of Lakewood v. Plain Dealer Pub. Co.*
   486 U.S. 750 S.Ct. 2138 L.Ed.2d 771 (1988) ............................................... 17

*College Republicans at San Francisco State University v. Reed*
   523 F.Supp.2d 1005 (N.D. Cal. 2007) ............................................................. 7

*Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*
   847 F.2d 593 (9th Cir. 1988) ......................................................................... 18

*Doe v. Harris*
   772 F.3d 563 (9th Cir.2014) .......................................................................... 23

*Edwards v. City of Coeur d'Alene*
   262 F.3d 856 (9th Cir. 2001) ......................................................................... 19

*Elrod v. Burns*
   427 U.S. 347 (1976) ......................................................................................... 8

*Firearms Policy Coalition Second Amendment Defense Committee v. Harris*
   192 F.Supp.3d 1120 (June 22, 2016) ............................................................... 7

*Frisby v. Schultz*
   487 U.S. 474 (1988) ....................................................................................... 19

Pls' Mot. for Prelim. Inj.                    Page - iii
Case No.   18-cv-00189

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

*Gaudiya Vaishnava Soc'y v. City and Cnty. of San Francisco*
    952 F.2d 1059 (9th Cir.1990) ................................................................. 17

*Gibson v. United States*
    781 F.2d 1334 (9th Cir. 1986) ................................................................ 20

*Goldie's* Bookstore v. Superior Ct.
    739 F.2d 466 (9th Cir.1984) .................................................................. 21

*Gregory v. City of Chicago*
    394 U.S. 111 (1969) ................................................................................ 9

*Hartman v. Moore*
    547 U.S. 250 (2006) .............................................................................. 20

*Healy v. James*
    408 U.S. 169 (1972 ............................................................................ 9, 10

*Klein v. City of San Clemente*
    584 F.3d 1196 (9th Cir.2009) .................................................................. 7

*Madsen v. Women's Health Ctr.*
    512 U.S. 753 (1994) ................................................................................ 9

*OSU Student All. v. Ray*
    699 F.3d 1053 (9th Cir. 2012) ........................................................... 19, 20

*Papish v. Bd. of Curators of the Univ. of Mo.*
    410 U.S. 667 (1973) ................................................................................ 9

*Pinard v. Clatskanie School Dist. 6J*
    467 F.3d 755 (9th Cir. 2006) ................................................................. 20

*Plyer v. Doe*
    457 U.S. 202 (1982) .............................................................................. 19

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992) ................................................................................ 9

*S.O.C., Inc. v. Cnty. of Clark*
    152 F.3d 1136 (9th Cir. 1998) ............................................................. 8, 21

PLS' MOT. FOR PRELIM. INJ.                Page - iv
CASE NO.   18-CV-00189

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

*Sammartano v. First Jud. Dist. Ct.*
    303 F.3d 959 (9th Cir. 2002) ........................................................................ 7, 23

*Sanchez v. City of Fresno*
    914 F.Supp.2d 1079 (E.D. Cal. 2012) ................................................................ 18

*Shelton v. Tucker*
    364 U.S. 479 (1960) ........................................................................................ 9

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009) ......................................................................... 22

*Tracy Rifle & Pistol LLC v. Harris*
    118 F. Supp. 3d 1182 (E.D. Cal. 2015), aff'd, 637 F. App'x 401 (9th Cir. 2016) ............. 21

*United States v. Eichman*
    496 U.S. 310 (1990) ........................................................................................ 9

*Ward v. Rock Against Racism*
    491 U.S. 781 (1989) ....................................................................................... 19

*Widmar v. Vincent*
    454 U.S. 263 (1981) .................................................................................... 9, 10

*Young v. City of Simi Valley*
    216 F.3d 807 (9th Cir.2000) ............................................................................ 17

**STATUTES**

42 U.S.C. § 1983 ................................................................................................ 8, 20

PLS' MOT. FOR PRELIM. INJ.                    Page - v
CASE NO.   18-CV-00189

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

# INTRODUCTION

It is axiomatic that "a function of free speech under our system of government is to invite dispute." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, [citation] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."; internal citation omitted).

Plaintiffs seek a prohibitory preliminary injunction against Defendants ordering them not to assess security fees against Plaintiffs for their event held on February 10, 2018, pending disposition of this lawsuit. This case involves a classic, unconstitutional heckler's veto whereby a public university determines the amount it will charge a student organization for event security based upon the level of violence threatened or committed by a "hostile mob." *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992) ("Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob.") The University of Washington's ("UW") Security Fee Policy is unconstitutionally content-based because in order to assess the cost of event security it requires that campus administrators "must

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response." *Id.* at 123–24 (county parade security fee ordinance).

On February 9, 2018, this Court determined that the Security Fee Policy at issue here is "neither reasonable nor viewpoint neutral" because it "fails to provide 'narrowly drawn, reasonable and definite standards,' and thereby gives administrators broad discretion to determine how much to charge student organizations for enhanced security, or whether to charge at all." Dkt. No. 19, at 5, quoting *Forsyth County*, 505 U.S. at 133. Here, as in *Forsyth County*, the Court "must decide whether the free speech guarantees of the First and Fourteenth Amendments are violated by an assembly … ordinance that permits a government administrator to vary the fee for assembling … to reflect the estimated cost of maintaining public order." *Forsyth County*, 505 U.S. at 124. In granting Plaintiffs a temporary restraining order enjoining Defendants from assessing a security fee against Plaintiffs for use of the campus' Red Square, the Court concluded the Policy "violates Plaintiffs' First Amendment rights to freedom of speech and expression." Dkt. No. 19, at 8.

*Nothing has changed*. The Policy in effect at the time the Court entered its TRO remains in effect, and therefore remains in violation of the First Amendment rights to freedom of speech and expression.[1] **First**, Plaintiffs are likely to succeed on the merits of

---

[1] Though only indirectly addressed in the earlier proceedings, the same rationale for applying the *Forsyth County* heckler's veto doctrine applies with equal force to Plaintiff's First Amendment freedom of assembly.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

their claims. The Security Fee Policy is neither reasonable nor viewpoint neutral under any level of scrutiny. Red Square is a traditional public forum, or at least a designated public forum.[2] Its traditional and historic use and purpose is to serve as a gateway for expressive activity accessible and open to the public, including groups unaffiliated with the University. Even as a limited public forum, the Security Fee Policy fails to provide narrowly drawn, reasonable and definite standards, and thereby gives administrators broad discretion to determine how much to charge student organizations for enhanced security, or whether to charge at all. Dkt. No. 19 at 5.

**Second**, Plaintiffs will continue to suffer irreparable harm without an injunction. Permitting Defendants to assess fees against Plaintiffs based on the current Security Fee Policy's vague, overbroad and arbitrary standards would irreparably harm Plaintiffs' fundamental rights under the United States Constitution. Both the exorbitant amount of the fee[3] as well as the process by which it is assessed chill the exercise of First Amendment speech and expression because the size of the fee is determined by

---

[2] In their opposition to Plaintiffs' TRO Motion and at oral argument, Defendants' counsel misrepresented to the Court that Red Square is an "undisputed" limited public forum. (Dkt. No. 12 at 2). The Court erroneously adopted Defendants' misrepresentation. (Dkt. No. 19 at 3). As reference to the Motion clearly shows, Plaintiffs <u>did not</u> argue that Red Square is a limited public forum but qualified its characterization of the forum for purposes of argument: "Here, Red Square constitutes, *at a minimum*, a limited public forum for the purposes of any analysis under the First Amendment." (Dkt. No. 2-1 at 10).

[3] The original estimate given to Plaintiffs by Defendants was $17,000. The actual expenditure by Defendants for the event, which took place on February 10, 2018, is unknown to Plaintiffs, as is the amount UW would charge Plaintiffs.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

reference to the actions of hostile mobs attending past events by "controversial"[4] speakers.

**Third**, the balance of equities and the public interest support the entry of a preliminary injunction because without one the Plaintiffs will be required to satisfy an unconscionable charge, which they are unable to satisfy, and which will thereafter result in the imposition of penalties depriving the College Republicans of their associational rights. Additionally, Plaintiff Chevy Swanson ("Swanson"), a student, will become personally liable for any amount assessed against the group. On the other hand, the UW will face no serious injustice in delaying enforcement of its Security Fee Policy pending resolution of this action on the merits.

## STATEMENT OF RELEVENT FACTS

Many of the pertinent facts in support of Plaintiffs' PI Motion are set forth in the Complaint filed on February 6, 2018, (Dkt. No. 1 at 5-9) and the TRO Motion (Dkt. No. 2-1 at 2-6). For convenience and brevity, Plaintiffs set forth the central undisputed facts on which its request for a preliminary injunction is based, including newly adduced facts and context. With respect to any facts, background context, or legal claims not discussed below, Plaintiffs respectfully refer the Court to the Complaint, the declarations and evidentiary exhibits submitted in support of the PI Motion.

---

[4] Controversies surrounding certain public figures are the product of an ideological strategy to silence politically conservative and libertarian viewpoints. As argued herein, controversial proponents of non-conservative viewpoints do not similarly encounter such attempts at censorship.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

**A.**     **UW Opens Its Facilities For Expressive Use By The Public**

The "Central Plaza" at UW is also known as Red Square after its red brick paving. Becker Decl., ¶ 4. UW holds Red Square out as a public forum for expressive use. *Id*. ("This large plaza is really the central gathering place on campus."); UW website, "Outdoor Events & Reservations"; https://facilities.uw.edu/catalog/outdoor-events ("Weddings, banquets, fun runs, pep rallies, luncheons, plays, open houses, displays and art shows are just some of the events that have been held on the campus grounds."). In fact, it is among the more popular venues for events. *Id*. (website) ("Some of the more popular spaces include … Red Square…."). Red Square is not limited to use by students, staff or faculty, but by "campus visitors (without a NetID)" as well. *Id*.

**B.**     **UW's Security Fee Policy, Facially And Applied To Plaintiffs, Requires Reference To The Reactions Of Violent Mobs Targeting Politically Conservative Speakers**

UW admits that it determines the amount of security fees it assesses against a group based upon the reaction to controversial speakers by hostile agitators. Dkt. No. 15, Vinson Decl. at 6 ("UWPD researched threats to the speaker or group hosting the event. In this case, there appear to routinely be assaults against Joey Gibson at prior events, including:

- January 27, 2018, rally in Olympia where he was pepper sprayed
- August 27, 2017, rally in Berkeley where he was assaulted and pepper sprayed
- Late May-early June, 2017, when Gibson publically acknowledged receiving multiple death threats

UWPD takes these assaults and threats to life into consideration in determining the security presence needed to keep the speaker safe while he is present on campus."). Indeed, security fees established for events featuring controversial speakers associated with politically left-

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

wing viewpoints are not comparable to event security fees for public appearances by controversial conservative speakers because their appearances do not attract hostile agitators. Defendant Vinson has acknowledged the disparagement between security fee costs for speakers who do not attract hostile protesters and those that do and that the cost of an appearance by controversial figure Milo Yiannopolous at UW would exceed $9,000 due to protests that occurred during his appearance there in 2017, but controversial Black Lives Matter activist Shaun King, who appeared on campus without encountering protests, would be charged about $4,000 if he were to return to campus. Becker Decl., ¶ 5.

### C. Plaintiffs Are Individually Responsible For Paying The Security Fee

Plaintiff Swanson is president of the UW College Republicans. Swanson Decl. ¶ 1. On multiple occasions, Swanson met with student event advisors to discuss planning for the group's Saturday, February 10, 2018, event ("Event"). *Id.*, ¶¶ 9, 11-12. During those discussions, Swanson was advised that each of the College Republican members would be held personally responsible for payment of the security fee assessment and that the estimated amount of the security fee prior to the Event was $17,000. *Id.*, ¶ 12. Swanson advised his club's members that he would bear financial responsibility for the Event. *Id.* However, Swanson is incapable of satisfying such a large sum of money. *Id.*

### LEGAL STANDARD

A prohibitory injunction preserves the status quo pending a determination on the merits. *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir.1988). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

preliminary relief; (3) that a balance of the equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). A plaintiff must satisfy each of the *Winter* factors to obtain preliminary injunctive relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. (quotations omitted).

"The denial of First Amendment freedoms generally constitutes irreparable harm, and that harm is exacerbated where a plaintiff seeks to engage in political speech." *Firearms Policy Coalition Second Amendment Defense Committee v. Harris,* 192 F.Supp.3d 1120 (June 22, 2016); *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir.2009). "In a case like the one at bar, where the First Amendment is implicated, the Supreme Court has made clear that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *College Republicans at San Francisco State University v. Reed,* 523 F.Supp.2d 1005, 1011 (N.D. Cal. 2007), citing *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), in turn citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty. of Clark,* 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

irreparable harm). "In other words, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period." *Reed*, 523 F.Supp.2d at 1011.

In First Amendment cases, "the 'balancing of the hardships' factor also tends to turn on whether the challengers can show that the regulations they attack are substantially overbroad." *Reed*, 523 F.Supp.2d at 1101. Similarly, the requirement that issuance of a preliminary injunction be in the "public interest" usually is deemed satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened. *Id.*

## ARGUMENT

### PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

#### A. <u>Plaintiffs' Likelihood of Success is Strong on Multiple Constitutional Grounds</u>

Plaintiffs bring causes of action under 42 U.S.C. § 1983 ("Section 1983"). A Section 1983 claim must allege facts demonstrating that the plaintiff was deprived of rights, privileges or immunities under the Constitution by a person acting under color of law. *Butler v. Elle,* 281 F.3d 1014, 1021 (9th Cir. 2002). Plaintiffs are likely to succeed on the merits of this case because Defendants' Security Fee Policy is facially and as-applied invalid under the First and Fourteenth Amendments to the U.S. Constitution.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

**B.  UW Seattle's First and Fourteenth Amendment Violations**

Freedom of expression must be jealously guarded, including – and particularly – when the controversial or unpopular nature of a speaker's message has stirred emotions and triggered an attempt to suppress that message. *See Gregory v. City of Chicago*, 394 U.S. 111 (1969). The true test of the right to free speech is the protection afforded to unpopular, unpleasant, disturbing, or even despised speech. *See Madsen v. Women's Health Ctr.*, 512 U.S. 753, 773-74 (1994) (pro-life expression); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (cross-burning); *United States v. Eichman*, 496 U.S. 310 (1990) (flag burning). These constitutional principles apply with equal force to the campuses of public universities, which the Supreme Court regards as the "market place of ideas," and has stated that "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Healy v. James*, 408 U.S. 169, 180 (1972) (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)); *see also Widmar v. Vincent*, 454 U.S. 263, 268-69 (1981); *see also Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973) ("the mere dissemination of ideas – no matter how offensive to good taste – on a state university campus may not be shut off in the name alone of 'conventions of decency.'").

The First Amendment's guarantees of freedom of expression and association fully extend to public universities like UW Seattle. *See, e.g., Keyishian v. Board of Regents*, 385 U.S. 589, 605-06 (1967) ("[W]e have recognized that the university is a traditional sphere of free expression so fundamental to the functioning of our society that the

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

Government's ability to control speech within that sphere by means of conditions attached to the expenditure of Government funds is restricted by the vagueness and overbreadth doctrines of the First Amendment"); *Healy v. James*, 408 U.S. at 180 (citation omitted) ("[T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools'"); *Widmar v. Vincent*, 454 U.S. at 268-69 ("With respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities").

### 1. Red Square is a traditional public forum, or at least a designated forum

At minimum, a designated public forum exists where, as here, the government has intentionally opened up property "for expressive use by the general public or by a particular class of speakers." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678 (1998) ["Forbes"]; *see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (designated public forum exists where property is "opened for expressive activity by part or all of the public"). A limited public forum, a subcategory of designated public fora, is created when the government opens a non-public forum for limited "use by certain groups or dedicated to solely to the discussion of certain subjects." *Christian Legal Soc'y Chapter of Univ. of Cal. Hastings Coll. Of Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010). Thus, the defining difference between the two fora is

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

whether the government reserves the right to restrict access to a specific group (as opposed to a class of persons) or restricts the scope of allowable speech to particular subjects. *See, e.g., Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) ("If the government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny;" emphasis added).

Traditional public fora are places, such as public sidewalks or parks, where individuals have long been able to freely express their ideas. *Perry Educ. Ass'n v. Perry Local Educs. Ass'n*, 460 U.S. 37, 45 (1983). In public fora, the government may not completely restrict speech. *Id.* "[T]o enforce a content-based exclusion[, the government] must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* In evaluating whether an area is a traditional public forum, courts examine: "(1) the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area; (2) the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area; and (3) traditional or historic use of both the property in question and other similar properties." *Shaw v. Burke*, Dkt No. 45, 2:17-cv-02386-ODW (PLx), 2018 WL 459661, at *7 (C.D. Cal. Jan. 17, 2018), citing *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1100 (9th Cir. 2003). "The Court must also keep in mind that a modern university contains a variety of fora." *Id.*, quoting *Bowman*

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

*v. White*, 444 F.3d 967, 976 (8th Cir. 2006) (internal punctuation and quotation marks omitted).

In *Shaw*, the Plaintiff distributed Spanish–language copies of the United States Constitution alongside a "large thoroughfare called 'the Mall'" on a community college campus. College administrators accused him of violating the college's free speech policies by failing to obtain a permit and by engaging in expressive activity at a location other than the college's designated "Free Speech Area." *Id.* at *3. In denying the college's Rule 12(b)(6) motion in part, the Court held that the "Mall" was a traditional public forum. *Id.* ("Given the traditional purpose of the open, outdoor areas of universities, such as the Mall' on [the] campus, the Court finds that these areas are traditional public fora, regardless of [the college's] regulations naming them non-public fora."); and *see Bowman v. White*, 444 F.3d 967, 990 (8th Cir. 2006) (Bye, J., concurring) ("[W]e should permit a prima facie showing of a traditional public forum to be made when a plaintiff establishes the space at issue is a public street, sidewalk, or plaza associated with expressive activity.... When a plaintiff makes a prima facie showing a space is a traditional public forum, the defendant should bear the burden to produce objective evidence of the (1) physical characteristics, (2) original purpose, or (3) historical and traditional use of the space which would rebut plaintiff's prima facie showing.")

Defendants claim that the entire University is a limited public forum with its primary mission being to educate. But, in a forum analysis, "[t]he issue is not whether the mission of the University as a whole is to provide full access to everyone on all

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

topics, but whether the University created the spaces for public access and a purpose not incompatible with expressive conduct and such spaces have historically been used for expressive conduct. The University's overall mission is irrelevant to a proper First Amendment forum analysis." *Bowman v. White*, 444 F.3d at 985. Applying such a standard, Red Square is, at minimum, a designated public forum, but given its traditional and historical use more practically a traditional public forum.

### 2. Defendants Security Fee Policy, facially and as applied, constitutes an unconstitutional heckler's veto

According to extensive legal precedent that is well-settled, Defendants may not adopt policies that regulate expression on the basis of one's viewpoint, or that are unreasonable. Unfortunately, that is precisely what Defendants have done by enacting and enforcing the Security Fee Policy, which is facially invalid due to the fact that it is vague and contains no objective criteria, factors, or standards to guide University administrators when establishing the fee amount to assess RSOs when applying for use of campus venues to exercise their constitutionally protected freedom of speech and assembly.

By requiring Plaintiffs to pay security fees based on the potential reaction of those opposed to the viewpoints expressed, the University is exercising unbridled discretion inherent in its security fee policy to impose an unconstitutional heckler's veto. In *Forsyth County*, the Supreme Court held that when public authorities impose a fee for speaking based on the estimated costs of security, it runs afoul of the First Amendment. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. at 134-35 ("Listeners' reaction to speech is not a

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

content-neutral regulation. [citations omitted]. Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob."). According to the Court, "[a] government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." Because the "decision [of] how much to charge for police protection . . . or even whether to charge at all" was "left to the whim of the administrator," without any consideration of "objective factors" or any requirement for "explanation," the ordinance was an unconstitutional prior restraint on speech.

UW Seattle's Security Fee Policy and its practice of applying it in its sole discretion, like the ordinance in *Forsyth County*, vest campus administrators with unbridled discretion to charge student groups security fees for their events. The policy does not provide administrators with any meaningful guidance when deciding whether to assess security fees or any justification for charging the fees to RSOs like the Plaintiffs. The University's application of its policy also demonstrates its unbridled discretion in applying its security fees policies.

Not only does the lack of specific criteria for the Security Fee Policy and procedures, and permits administrators to charge fees based on the content and viewpoint being expressed, but it also allows the assessment of fees based on the potential negative reactions of listeners, both issues that led the Supreme Court to declare unconstitutional the permit policy in *Forsyth County*. "Listeners' reaction to

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

speech is not a content-neutral basis for regulation." In levying fees based on the reaction of hostile activists engaged in a purposeful scheme to drown out views they oppose, UW Seattle is requiring a registered student organization ("RSO") to provide funding for extra security because of the perceived controversial content of the presentation and the potentially hostile reaction of audience members. A requirement that student organizations hosting controversial events pay for extra security is unconstitutional because it affixes a price tag to events on the basis of their expressive content. It is, in effect, a heckler's veto tax on protected speech.

In the interest of preserving content neutrality when determining fees for campus events, UW Seattle cannot and must not force student groups to pay more money for security protection because an event deals with perceived controversial subjects or features controversial speakers, or because others in the community might feel offended by an event and subsequently become violent. UW Seattle' policies or practices regarding security for events do not supersede students' and student organizations' First Amendment rights. Moreover, by holding student organizations that host expressive events financially responsible for possible disruptive activity resulting from the controversial character of their events, UW Seattle grants a "heckler's veto" to the most disruptive members of the university community. Individuals wishing to silence speech with which they disagree merely have to threaten to protest and student groups not able to furnish adequate funds for security will be forced to cancel their events. In such a situation, disruptive heckling triumphs over responsible expressive activity. This

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

is an unacceptable result in a free society and is especially lamentable on a college or university campus. Controversial speech cannot be unduly burdened simply because it is controversial.

### 3. UW's Security Fee Policy violates Plaintiffs' Fourteenth Amendment equal protection rights

If the charge for extra security for the Plaintiffs' event is permitted to stand, it not only will be unconstitutional but also will almost certainly be in violation of the group's right to legal equality. Plaintiffs' members have reported that other, similar events on campus have not included any security at all, including a recent rally by the Industrial Workers of the World. UW Seattle simply cannot logically and reasonably justify why it charges some organizations either less than politically conservative groups or nothing at all. It is not Defendants' purpose or intent that is relevant, but the effect its policy has in treating groups/speakers disparately on the basis of their political or social views.

Moreover, it is likely that many events held on the day (Saturday) and times (afternoon) similar to that of the Plaintiffs' scheduled event in Red Square itself also have had no security officers present. Thus, it is very unlikely that UW Seattle can demonstrate that the security costs demanded of the Plaintiffs are ordinary rather than extraordinary. Singling out Plaintiffs' Event for special treatment holds the group to a clear and unconstitutional double standard.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

**4. UW administrators have unfettered discretion over the amounts charged to RSOs, which they exercise by requiring some groups to pay substantially larger security fees than required of other groups**

The Security Fee Policy impermissibly gives Defendants unfettered discretion in approving speakers proposed by the student groups, thus giving Defendants the power to regulate speakers by their content. "[A] law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials." *Citizens for Free Speech, LLC v. County of Alameda,* 62 F.Supp.3d 1129 (NDCA 2014), *citing Gaudiya Vaishnava Soc'y v. City and Cnty. of San Francisco,* 952 F.2d 1059, 1065 (9th Cir.1990) (*in turn citing City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 755, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)); *Young v. City of Simi Valley,* 216 F.3d 807, 819 (9th Cir.2000) ("When an approval process lacks procedural safeguards or is completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's ... distaste for the content of the speech."). Given its vagueness, the Security Fee Policy allows Defendants to arbitrarily and discriminatorily regulate student expression, without providing the students a reasonable opportunity to understand and determine what protected speech will be allowed and what protected speech will be banned. As such, the Security Fee Policy is facially invalid and unconstitutional.

The policy is also invalid as applied to Defendants, who have been burdened with such significant requirements and constraints so as to effectively deprive them of the opportunity to host their selected speaker, while in the meantime, UW Seattle has

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

hosted numerous non-conservative speakers at central locations on campus. The Security Fee Policy, as applied by Defendants, has deprived and continues to deprive Plaintiffs of their rights without due process.

For similar reasons, Defendants' conduct has violated Plaintiffs' equal protection rights. "The first step in equal protection analysis is to identify the [defendants'] classification of groups." *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau,* 847 F.2d 593, 596 (9th Cir. 1988). To accomplish this, a plaintiff may show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people. *Christy v. Hodel,* 857 F.2d 1324, 1331 (9th Cir. 1988). Here, Defendants clearly classify students and student organizations into conservative and non-conservative groups, and treat them differently based on the hostile reactions of non-conservative groups to conservative speakers and the absence of any form of hostile reaction by conservative groups to non-conservative speakers.

"The next step ... [is] to determine the level of scrutiny." *Country Classic Dairies,* 847 F.2d at 596. Given that Defendants' conduct violates Plaintiffs' fundamental right of free speech, Plaintiffs are entitled to the benefit of strict scrutiny, and "[a] classification that impinges upon a fundamental right must be 'precisely tailored to serve a compelling governmental interest.'" *Sanchez v. City of Fresno,* 914 F.Supp.2d 1079, 1109 (E.D. Cal. 2012); *citing Plyer v. Doe,* 457 U.S. 202, 217 (1982). Under this requirement, regulations cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 798 (1989).

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

A restriction is "narrowly tailored" only if it eliminates no more evil than it seeks to remedy. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Further, "the First Amendment demands that municipalities provide 'tangible evidence' that speech-restrictive regulations are 'necessary' to advance the proffered interest…" *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 863 (9th Cir. 2001) (citation omitted).

Here, the Security Fee Policy and its disparate application to Plaintiffs was and is not narrowly tailored to serve a compelling governmental interest. Indeed, Defendants have never articulated exactly what factors, conditions or standards are taken into account when setting its security fees for student facility use (if a compelling government interest exists, it only exists whenever hostile actors threaten a breach of security due to viewpoints they wish to suppress). While UW Seattle has an interest in maintaining a safe campus, strapping student groups with a prohibitively excessive price tag on security, and only with respect to speakers hosted by conservative students and student organizations, is not narrowly tailored to UW Seattle's interests. UW Seattle's policy has been and is being applied to discriminate intentionally and unequally against Plaintiffs and students with conservative perspectives – while allowing students who champion non-conservative speakers the opportunity to enjoy on-campus presentations at central locations and opportune times. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (finding violation of free speech, due process, and equal protection for university's application of unwritten policy). The disparate treatment of Plaintiffs as compared to similarly situated students and student

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

organizations based on UW Seattle's Security Fee Policy and practices has burdened Plaintiffs' fundamental right, and constitutes a violation of equal protection.

### C. UW Seattle Has Retaliated Against Plaintiffs On the Basis of their Exercise of their Free Speech Rights

The First Amendment forbids government officials from retaliating against individuals for speaking out. *Blair v. Bethel School Dist.,* 608 F.3d 540, 543 (9th Cir. 2010); *Hartman v. Moore,* 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006); *see also Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir. 1986). To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *See Blair*, 608 F.3d at 543; *Pinard v. Clatskanie School Dist. 6J,* 467 F.3d 755, 770 (9th Cir. 2006). The term "retaliation" perhaps implies ill will, but by definition, no such state of mind requirement forms part of the elements of the cause of action.

When Plaintiffs attempted to secure the appearance of Gibson as an on-campus political speaker, it was clearly engaging in constitutionally protected activity. UW Seattle's decision to impose a draconian and prohibitively hefty security fee on Plaintiffs cannot be explained by objective criteria but by the ideological nature of Gibson's message and the hostility shown towards it by non-conservative groups. As such, Plaintiffs are likely to prevail on their free speech retaliation claim.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

### D.    Plaintiffs Are Likely to Be Irreparably Harmed Absent Immediate Injunctive Relief

"[P]urposeful unconstitutional suppression of speech constitutes irreparable harm for preliminary injunction purposes." *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1192 (E.D. Cal. 2015), aff'd, 637 F. App'x 401 (9th Cir. 2016) (citing *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir.1984)). As stated above, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period. *Reed*, 523 F.Supp.2d at 1011. Without an injunction preventing Defendants from assessing an exorbitantly excessive security fee from Plaintiffs irreparable harm in the form of deprivation of First Amendment freedoms will befall Plaintiffs and all other UW Seattle students who wish to hear Gibson and other political conservatives speak. As explained in the Complaint, Defendants' discriminatory tax on Plaintiffs' freedom of expression, association and assembly is not acceptable, as it renders it impossible for Plaintiffs to hold its proposed rally. *See, e.g., S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm). Additionally, Defendants are unlikely to reverse their decision to impose such a large security fee even if the event were to be rescheduled.

Plaintiffs' irreparable First Amendment injuries cannot adequately be compensated by damages or any other remedy available at law. "Unlike a monetary

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

injury, violations of the First Amendment 'cannot be adequately remedied through damages.'" *Americans for Prosperity Foundation v. Harris,* 182 F.Supp.3d 1049, 1058 (CDCA 2016), *citing Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138 (9th Cir. 2009). Irreparable injury is clearly shown, necessitating the relief plaintiffs seek in this motion.

### E. The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor

Given Plaintiffs' showing of the facially and as-applied invalidity of the vague Security Fee Policy, Plaintiffs necessarily have shown that leaving that policy in place "would substantially chill the exercise of fragile and constitutionally fundamental rights," and thereby constitute an intolerable hardship to Plaintiffs. *Reed*, 523 F.Supp.2d at 1101. As mentioned above, Defendants' assessment of such a draconian and prohibitively excessive security fee will deprive Plaintiffs of their freedom of expression, assembly and association and will deny students an opportunity to hear from a gifted speaker whose message resonates with many students. By contrast, temporarily enjoining Defendants' enforcement of this policy to arbitrarily assess a draconian and prohibitively excessive security fee will not result in hardship to Defendants, who are in a position to adopt, at least on an interim basis, a more narrowly crafted set of equally applied provisions that enable UW Seattle to achieve any legitimate ends without unjustifiably invading First Amendment freedoms. *See id.* In addition, Defendants will suffer no legitimate harm by accommodating a speaking event that UW Seattle has provisionally agreed to host, and that is of a type that UW Seattle consistently accommodates with respect to non-conservative speakers and student groups. Indeed,

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

UW Seattle allowed an off-campus group – the International Workers of the World – to use Red Square on a Saturday with no security costs assessed against them. Defendants will suffer no harm by providing Plaintiffs with the same opportunity to host their speakers of choice, as the opportunities routinely afforded by Defendants to non-conservative students and student groups. The Constitution demands no less.

### F. <u>Injunctive Relief Is In The Public Interest</u>

"As the Ninth Circuit has consistently recognized, there is a significant public interest in upholding First Amendment principles." *Americans for Prosperity Foundation v. Harris*, 182 F.Supp.3d at 1059 (internal citations omitted); *see also Doe v. Harris*, 772 F.3d 563, 683 (9th Cir.2014); *Sammartano v. First Judicial Dist. Court,* 303 F.3d 959, 974 (9th Cir.2002). As such, in First Amendment cases, the requirement that issuance of a preliminary injunction be in the "public interest" usually is deemed satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened. *Reed*, 523 F. Supp. 2d at 1101. The public is best served by preserving the foundation of American democracy via informed public discourse. *See Sammartano*, 303 F.3d at 974 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").

### THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Rule 65(c) of the Federal Rules of Civil Procedure provides that a TRO or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328

found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has discretion as to whether any security is required and, if so, the amount thereof. *See e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Plaintiffs request that the Court waive any bond requirement, because enjoining Defendants from unconstitutionally enforcing its vague Security Fee Policy to effectively prohibit Plaintiffs' event from taking place will not financially affect Defendants, who routinely accommodate non-conservative speakers at similar on-campus events. A bond would, however, be burdensome on already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v. Placentia-Yorba Linda School Dist.*, 573 F.Supp.2d 1291, FN 6 (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damages to the District of issuing injunction); citing *Doctor John's, Inc. v. Sioux City*, 305 F.Supp.2d 1022, 1043-44 (N.D.Iowa 2004) ("requiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of such gravity that protection of those rights should not be contingent upon an ability to pay.").

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a preliminary injunction pending trial on the merits of Plaintiffs' claims.

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328  Fax: 310-765-6328

DATED this March 6, 2018

ELLIS, LI & McKINSTRY PLLC

*s/ Kyle D. Netterfield*

Kyle D. Netterfield WSBA No. 27101
Ellis, Li & McKinstry PLLC
2025 First Avenue PHA
Seattle, WA  98121
Telephone: (206) 682-0565
Fax: (206) 625-1052
Email:  knetterfield@elmlaw.com
(Local Counsel)

Attorneys for Plaintiffs, College
Republicans of the University of
Washington and Chevy Swanson

FREEDOM X

*s/*

William J. Becker, Jr., ESQ. SBN No. 134545
(Pro Hac Vice)
Freedom X
11500 Olympic Blvd., Suite 400
Los Angeles, CA  90064
Telephone:  (310)636-1018
Fax: (310) 765-6328
Email: bill@freedomxlaw.com
(Lead Counsel)

Attorneys for Plaintiffs, College Republicans
of the University of Washington and Chevy
Swanson

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2018, I electronically filed the

foregoing document with the Clerk of the United States District Court using the

PLS' MOT. FOR PRELIM. INJ.                    Page - 25
CASE NO.  18-CV-00189

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA  90064
310-765-6328  Fax: 310-765-6328

CM/ECF system which will send notification of such filig to all parties who are registered with the CMECF system.

DATED this 7th day of March, 2018

By: /s/ William J. Becker, Jr.

William J. Becker, Jr. (Pro Hac Vice)

Pls' Mot. for Prelim. Inj.
Case No. 18-cv-00189

Page - 26

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328 Fax: 310-765-6328