# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| **COLLEGE REPUBLICANS OF THE UNIVERSITY OF WASHINGTON**; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> **ANA MARI CAUCE**, in her official capacity as president of the University of Washington; et al., <br><br> Defendants. | NO. 2:18-cv-00189-MJP <br><br> PLAINTIFFS' REPLY TO OPPOSITION RE: MOTION FOR PRELIMINARY INJUNCTION <br><br> **Note on Motion Calendar: March 20, 2018** <br><br> Judge: Hon. Marsha J. Pechman <br> Date: April 17, 2018 <br> Time: 10:00 a.m. <br> Crtrm.: Suite 14206, United States Courthouse, 700 Stewart Street, Seattle, WA 98101-9906 |

REPLY TO OPP'N. RE: MOT. FOR PRELIM. INJ.
NO. 2:18-CV-00189-MJP

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328  Fax: 310-765-6328

# TABLE OF CONTENTS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

Plaintiffs Have Established Their Right To A Preliminary Injunction ............................. 2

    A. Red Square Is Not A Limited Public Forum When The University Invites Or Welcomes The General Public To Attend Events Held There ................................. 2

    B. Assuming, Arguendo, Red Square Is A Limited Public Forum, The Security Fee Policy Is Manifestly Unreasonable ..................................................................... 6

        1. The size of the fee ($17,000 and possibly more) is prohibitively expensive for a university student club, as UW well knows, and far greater than was charged such clubs in 2017 ....................................................................................... 6

        2. Enforcement of the enhanced security fee policy in such a way as to create a wide disparity of costs based upon the hostile reaction of the community to the message of conservative student groups like the College Republicans is an unconstitutional heckler's veto ................................................................ 8

    C. Defendants' Equal Protection Argument Fails ........................................................ 11

CONCLUSION ................................................................................................................... 11

REPLY TO OPP'N. RE: MOT. FOR PRELIM. INJ.  
NO. 2:18-CV-00189-MJP

Page - ii

FREEDOM X  
11500 Olympic Blvd Suite 400  
Los Angeles, CA 90064  
310-765-6328 Fax: 310-765-6328

# TABLE OF AUTHORITIES

**Cases**

Arkansas Educ. Television Comm'n v. Forbes
   523 U.S. 666 (1998) ............................................................................................... 3

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*
   473 U.S. 788 (1985) ............................................................................................... 3

*Desyllas v. Bernstine*
   351 F.3d 934 (9th Cir. 2003) ................................................................................. 5

*Flint v. Dennison*
   488 F.3d 816 (9th Cir. 2007) ................................................................................. 5

Hays Cnty. Guardian v. Supple
   969 F.2d 111 (5th Cir. 1992) ................................................................................. 5

*OSU Student All. v. Ray*
   699 F.3d 1053 (9th Cir. 2012) ............................................................................... 4

*Seattle Mideast Awareness Campaign v. King County*
   781 F.3d 489 (9th Cir. 2015) ................................................................................. 3

Widmar v. Vincent
   454 U.S. 263 (1981) ............................................................................................... 3

## INTRODUCTION

The inconsonant headline of a recent *Wall Street Journal* editorial supporting the TRO in this case – "Free Speech Gets Expensive"[1] – aptly and concisely encapsulates the issue here: Whether the University of Washington ("UW") unconstitutionally discriminates against campus student groups by charging them onerously high "enhanced security fees" based on their estimate of the public response to the content of the groups' free speech events and the number of police necessary to meet that response. Or, as the Court summarized it at the TRO stage, "whether the First Amendment allows the UW to seek reimbursement from the College Republicans based upon the criteria set forth in its Security Fee Policy." Dkt. No. 19 at 3.

UW contends that the entire campus is a limited public forum and that its policies and practices are reasonable and viewpoint neutral. Yet nowhere in its opposition argument has it addressed the practical fallacy of its position: Where only one side of a political debate seeks to undermine and suppress the other side's expressive rights, it is manifestly inequitable to burden the victim of such an ideological scheme with financial responsibility for the criminal actions of others.

Plaintiffs will respond to the insufficiency of Defendants' factual summary and the fallibility of their legal analysis in order. **First**, Red Square is at minimum a designated public forum, but more likely a traditional public forum, as a federal district

---

[1] The Editorial Board, "Free Speech Gets Expensive," *The Wall Street Journal* (February 9, 2018), https://www.wsj.com/articles/free-speech-gets-expensive-1518221133.

court that has surveyed relevant legal authority might posit. **Second**, even if Red Square were found to be a limited public forum, UW's assessment of enhanced security fees is manifestly unreasonable because it is not definite and objective in that the fee assessed depends on UW's measure of the amount of hostility likely to be created by speech based on its content and is therefore viewpoint-based. The policy's unreasonableness is manifestly so because (a) the fee assessment is so large as to be prohibitive and thus would prevent more speech than the policy is intended to prevent, and (b) it favors groups whose ideological opponents do not seek to undermine and suppress their expressive rights while disfavoring groups whose ideological opponents seek to undermine and suppress their expressive rights. As such, the security fee policy ratifies the unlawful actions of the "hostile mob" by marginalizing and inhibiting protected speech and therefore qualifies as a heckler's veto.

In addition to their hearsay and relevancy deficiencies (see Objections to Evidence submitted with this Reply), Defendants' evidence is insufficient to satisfy their burden of establishing that Red Square is a limited public forum, and that Plaintiffs should be held responsible for enhanced security fees.

## ARGUMENT

**Plaintiffs Have Established Their Right To A Preliminary Injunction**

A. <u>Red Square Is Not A Limited Public Forum When The University Invites Or Welcomes The General Public To Attend Events Held There</u>

UW insists that it is entitled to classify Red Square as a limited public forum regardless of how it is used. Whether a large government property like a university

campus with its streets, sidewalks and plazas, must be constrained by such a rigidly narrow view is not clearly established within the Ninth Circuit. Fora are classified on the basis of their (traditional, designated, limited) use, not on the basis of ipse dixit. "The government does not create a designated public forum through inaction or by permitting only limited discourse." *Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 497 (9th Cir. 2015), citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). "Instead, the government must intend to grant 'general access' to its property for expressive use, either by the general public or by a particular class of speakers." *Id.*, *citing Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998); see also *Widmar v. Vincent*, 454 U.S. 263, 267–68 (1981) (designated public forum created for student groups). "In contrast, when the government intends to grant only 'selective access,' by imposing either speaker-based or subject-matter limitations, it has created a limited public forum." *Forbes*, 523 U.S. at 679; *Cornelius*, 473 U.S. at 806.

UW asserts that because only faculty, staff and student organizations may "host" events in campus spaces "like" Red Square,[2] the space must be "reserved," and the events are to be populated by university-affiliated persons and their "guests," courts have classified similar fora as limited. But the facts here show that members of the "general public" – not merely "guests" – are welcome in Red Square. *See, e.g.*, Vinson Decl., ¶ 10(h) at 6 ("On January 20, 2018, a group of protesters were present in Red

---

[2] UW provides no examples of campus spaces "like" Red Square, nor bothers to substantiate any form of equivalency among campus event venues.

Square, unsponsored….").[3] Indeed, Plaintiffs' event was open to the general public. *See, e.g.*, Dkt. No. 36, Jaross Decl., ¶ 5 (fees based on whether the "general public" is invited), ¶ 7 (College Republicans invited "general public" to attend Patriot Prayer event while Sean King event limited to ticketed students, faculty, and staff with current UW IDs); *see also* Swanson Decl., ¶ 4 (hundreds of protesters showed up uninvited). In fact, the reason why a sizeable number of protesters were anticipated to disrupt the Patriot Rally event was because Red Square was open to use by the general public and no protocols were established limiting attendance at the rally to campus-affiliated persons and their guests. Had UW denied access to the general public and limited access to campus-affiliated persons and their guests, the need for implementing security and safety protocols conceivably could have been significantly reduced or eliminated, saving the University considerable money. *See, e.g.*, Dkt. No. 36, Jaross Decl., ¶ 4 ("While the College Republicans invited the general public to attend the Patriot Prayer event, attendance for the Sean King event was limited to ticketed students, faculty, and staff with current UW IDs.").

UW's view that the government's intention is the sole relevant factor in classifying the nature of the forum has been rejected in the Ninth Circuit – specifically

---

[3] The "group of protesters" Chief Vinson deceptively fails to identify was the radical Marxist Industrial Workers of the World, seemingly endorsing their presence on campus while subtly condemning the College Republicans, a student group entitled to be on campus, for being present at the IWW protest. As explained in greater context below, this is but one glaring example of viewpoint discrimination that leaps out of Defendants' evidence.

in the context of the university setting: In *OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012), the court commented that:

> [t]o destroy the designation of a public forum, the government must do more. It must consistently apply a policy specifically designed to maintain a forum as non-public. "[A] general policy of open access does not vanish when the government adopts a specific restriction on speech, because the government's policy is indicated by its consistent practice….

*Id.* at 1063 (quoting *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 117–18 (5th Cir. 1992)) (omitting internal citation); see also *Vegan Outreach, Inc. v. Los Angeles Community College Dist.*, CV 10-6525-GW(JCGX), 2013 WL 12233618, at *10 (C.D. Cal. Feb. 7, 2013)(listing cases endorsing the same or similar principle).

At least one Ninth Circuit decision supports the view that public college campuses are not necessarily one type of forum or another in their entirety. In *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007), the court's reading of *Widmar, supra,* led it to reject the same argument UW makes in this case, refusing to defer to "[the University's] judgment in reasonably regulating speech regardless whether the regulation advances the purpose of the forum the University has provided for speech" as a controlling principle in determining the type of forum created. *Id.,* at 828 ("We do not read the Supreme Court's cases to require such deference without first scrutinizing more carefully the nature of the student [] forum and the government's interest in limiting speech within that forum…. The Court looked to the nature of the property, explaining that the university in *Widmar* had 'created a forum generally open for use by student

groups' and therefore the university had 'assumed an obligation to justify its discriminations and exclusions under applicable constitutional norms.'").

Similarly in *Desyllas v. Bernstine*, 351 F.3d 934 (9th Cir. 2003), the court acknowledged that it "must first determine the character of the campus areas" in apply forum analysis to locations of a college campus (approved areas for handbill posting).

UW can limit who attends events in Red Square, even restrict them to campus-affiliated persons and their guests. When, as here, however, it has traditionally made access to Red Square open to the general public, forum analysis ineluctably leads to the conclusion that UW intended to grant general access to Red Square for expressive use by the general public. Accordingly, Red Square is either a traditional public forum open to the general public for expressive use or a designated public forum open to the general public for expressive use under varying circumstances. Without the benefit of discovery, it is premature to determine which classification fits.

B. <u>Assuming, Arguendo, Red Square Is A Limited Public Forum, The Security Fee Policy Is Manifestly Unreasonable</u>

1. **The size of the fee ($17,000 and possibly more) is prohibitively expensive for a university student club, as UW well knows, and far greater than was charged such clubs in 2017**

UW has disclosed statistical evidence of enhanced security fees assessed against student clubs only for year 2017. Dkt. No. 36, Jaross Decl., ¶ 4 (chart). (Historical information from prior years has not been presented but will be sought through discovery.) Nor has UW identified whether the events listed in its chart were held in Red Square or other venues. Nor does the chart explain why protesters from the radical

Marxist Industrial Workers of the World, a group unaffiliated with the campus community, were authorized to occupy Red Square on January 20, 2018, without an invitation or approval by University sponsors, why they were not invoiced for security. *See* Dkt. No. 38, Vinson Decl., ¶ 10(h) at 6 and Swanson Decl. ¶ 3 (identifying IWW as the group there that day). Nonetheless, it is apparent that the cost of security for the Patriot Rally far exceeded the cost of security for any other known event, at least in 2017.[4] As the Declaration of Chevy Swanson attached to the Motion indicates, neither Plaintiff can satisfy such a large expenditure.

Because the enhanced security fee policy lends itself too wide deviations from amounts customarily charged student groups, generally targeting groups with conservative ideological interests, it is not narrowly tailored to survive even the lowest level of scrutiny. "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Berger v. City of Seattle*, 569 F.3d 1029, 1085 (9th Cir. 2009). Here, the enhanced security fee policy broadly sweeps within its prohibition any conservative student group event that ideological opponents would try to disrupt or cause to have cancelled because of the message conveyed. *See, e.g.*, Dkt. No. 37-1, Carr Decl., Exh. 1 at 4 (describing opponents

---

[4] UW plays fast and loose with the selective information given. The unsponsored IWW rally is an example of a politically provocative organization being allowed to use Red Square without permission. Discovery and further investigation may turn up additional instances in which outside groups, and even campus community groups, make use of Red Square without applying for and receiving permission.

of the Patriot Prayer rally supporting violence as a method to shut down the Freedom Rally). Although the purpose of enhanced security fees is to provide sufficient police protection when necessary to deter and to respond to threats/acts of violence, groups like the College Republicans will be inhibited from engaging in expressive activity if it is likely to invite a hostile response from violent lawbreakers. The high cost of featuring someone the College Republicans' ideological opponents seek to protest thus results in the cancellation of such events through no fault of the student group.

> **2. Enforcement of the enhanced security fee policy in such a way as to create a wide disparity of costs based upon the hostile reaction of the community to the message of conservative student groups like the College Republicans is an unconstitutional heckler's veto**

Evidence of the discriminatory process to which the College Republicans were subjected oozes out of UW's evidence supporting their opposition. The evidence of viewpoint discrimination is marked by (1) subtle or deceptive words or phrases indicating the College Republicans are antagonists/provocateurs while the protesters are victims; (2) reliance on left-wing resources; (3) a less than thorough social media investigation; (4) stereotyping of conservatives and more.

One example of a deceptive and incomplete narrative reaching into the state of mind of UW's witnesses has briefly been mentioned already. In his declaration, Defendant Vinson describes how UWPD examine "relevant current events expected to influence the amount of security needed for a planned event." Dkt. No. 38, Vinson Decl., ¶ 10(h) at 6. He states:

> On January 20, 2018, a ***group of protesters*** were [sic] present in Red Square, unsponsored, ***commemorating*** the shooting of their colleague during the Milo Yiannopoulos event. Members of the College Republicans ***chose to set up a table*** in Red Square during that event ***and interact in a way with members of the protest that required UWPD to separate the groups***. ***UWPD expects that members of the College Republicans may act in a similar manner toward any protesters present during the Patriot Prayer event, requiring UWPD to protect the College Republicans and its supporters.***[5]

(Emphasis added.) The "group of protesters" was the radical Marxist IWW, an anti-capitalist, socialist labor union known for its long history of violent demonstrations. It was one of its members who was shot at the Milo Yiannopolous event at UW the prior year. The group, whose name Vinson dare not mention, wasn't assembling to rally, protest or engage in any other activity that could have been more accurately described, but was there congenially, one must surmise, "commemorating the shooting of a

---

[5] Had he couched it differently, it might have looked something like this:

> On January 20, 2018, a group of protesters gathered in Red Square, unsponsored. Officer X confronted an individual who appeared to be the leader of the protest and inquired into whether the group had been granted a permit to occupy the square. Officer X learned from this individual that the group had not obtained the required permission under our protocols and were there to protest by shouting into a bullhorn, thereby disrupting activity in the neighboring building. He additionally learned that the group was there to demonstrate in support of the shooting victim at the Milo Yiannopoulos event, a member of their group. Members of the College Republicans set up a table elsewhere in Red Square. Officer X observed members of the protesting group approach the table shouting invectives, threatening the student group and inciting violence. As it appeared that violence would break out, UWPD intervened. We expect protesters to behave the same way at the Patriot Rally.

colleague."[6] By their presence, the College Republicans, not the illegal occupiers, were presumed responsible for creating a volatile situation.

Carr's declaration is equally subtle and deceptive, suggesting a bias against Patriot Prayer, Proud Boys, and, by extension, the College Republicans with descriptions derived from two of the Internet's most unreliable sources, Wikipedia,[7] and the extreme left-wig Southern Poverty Law Center ("SPLC"). Of the two, the SPLC is the most unreliable, targeting "hate groups" that include Christians and churches merely based on their traditional views of marriage and sex. *See* Becker Decl., ¶ 3, Exh. 1 (letter to media re unreliability of use of biased SPLC).

UW witness Christopher Jaross refers to an individual named "Tiny" associated with Patriot Prayer leaving the designated area for the Patriot Rally and approach the counter-protesters, creating "the potential for violence," (Dkt. No. 36, ¶ 9) but says nothing of the hundreds of masked, black-clad anarchist protesters threatening to commit violence. See Swanson Decl., ¶ 4 (Patriot Rally crowd estimate 50-75 people; protesters in the hundreds, many clad in all black attire and wearing masks; video and photos of Tiny and protesters).

This evidence accomplishes the opposite of what UW hopes to demonstrate by exposing an lack of objectivity marked by a selective choice of anecdotes, words and

---

[6] The shooter, a woman, claimed to have shot the individual in self-defense. A criminal action in the matter is pending.

[7] Wikipedia invites all users—not just experts—to edit any page or to create new pages within the wiki Web site. https://en.wikipedia.org/wiki/Wiki. Thus descriptions on Wikipedia are often skewed toward the author(s) particular bias.

phrases; the use of unreliable and biased Internet sources, including the smear merchant SPLC; essential facts omitted; uninformed assumptions; and a lack of scrupulousness.

### C. <u>Defendants' Equal Protection Argument Fails</u>

Defendant's equal protection argument fails because Red Square is a public forum, traditional or designated, and because, even if the medium level of scrutiny is applied, the UW enhanced security fee policy places an unreasonable burden on Plaintiffs' free speech rights. Discrimination of speech "is subject to the strictest scrutiny under both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment." *Center for Bio-Ethical Reform, Inc. v. City and County of Honolulu*, 345 F. Supp.2d 1123, 1137 (D. Hawaii 2004). Because the remaining aspects of Plaintiffs' case—equal protection claim and request for injunctive and declaratory relief—are dependent upon their First Amendment theory, the above analysis applies equally to the entire case.

## CONCLUSION

It is clear that Plaintiffs' exercise of their rights of free speech and association are chilled due to actual past enforcement and future threats of enforcement. The challenged enhanced security fee policy is unconstitutional facially and as applied during the Freedom Rally. Plaintiffs are likely to prevail on the merits by establishing the unequal and unfair enforcement of its policy in charging them fees based on the number of police required to put down the uprisings of a hostile mob Plaintiffs are not responsible for inciting.

DATED this April 2, 2018

ELLIS, LI & McKINSTRY PLLC

s/ *Kyle D. Netterfield*
Kyle D. Netterfield WSBA No. 27101
Ellis, Li & McKinstry PLLC
2025 First Avenue PHA
Seattle, WA 98121
Telephone: (206) 682-0565
Fax: (206) 625-1052
Email: knetterfield@elmlaw.com

Attorneys for Plaintiffs, College Republicans of the University of Washington and Chevy Swanson

FREEDOM X

s/ *William J. Becker, Jr.*
William J. Becker, Jr.
(Pro Hac Vice)
Freedom X
11500 Olympic Blvd., Suite 400
Los Angeles, CA 90064
Telephone: (310)636-1018
Fax: (310) 765-6328
Email: bill@freedomxlaw.com

Attorneys for Plaintiffs, College Republicans of the University of Washington and Chevy Swanson

I hereby certify that on this 2nd day of April, 2018, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CMECF system.

REPLY TO OPP'N. RE: MOT. FOR PRELIM. INJ.
NO. 2:18-CV-00189-MJP

Page - 12

FREEDOM X
11500 Olympic Blvd Suite 400
Los Angeles, CA 90064
310-765-6328  Fax: 310-765-6328

1 DATED this 2nd day of April, 2018

By: */s/ William J. Becker, Jr.*
William J. Becker, Jr. (Pro Hac Vice)